**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:12CV-00101-JHM**

**ARMSTRONG COAL CO., INC. &
ARMSTRONG FABRICATORS, INC.**                                                             **PLAINTIFFS**

**vs.**

**UNITED STATES DEPARTMENT OF LABOR,
MINE SAFETY AND HEALTH ADMINISTRATION
(MSHA), JIM W. LANGLEY, WILLIAM COOK, III and
WENDELL CRICK**                                                                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiffs, Armstrong Coal Co., Inc. & Armstrong Fabricators, Inc., for a preliminary injunction [DN 14], on a motion by Defendants, United States Department of Labor, Mine Safety and Health Administration, Jim W. Langley, William Cook, III, and Wendell Crick, to dismiss this action [DN 16], and on a motion by Plaintiffs for a hearing [DN 21]. Fully briefed, these matters are now ripe for decision.

**I. BACKGROUND**

On September 4, 2012, Plaintiffs, Armstrong Coal Co., Inc. & Armstrong Fabricators, Inc., filed the instant action seeking declaratory and injunctive relief against the United States Department of Labor; Mine Safety and Health Administration (hereinafter "MSHA"); Jim W. Langley, District Manager for MSHA Coal District 10; William Cook, Supervisor of MSHA's Beaver Dam, Kentucky Field Office; and Wendell Crick, an MSHA inspector. Plaintiffs Armstrong Coal Company, Inc., and Armstrong Fabricators, Inc. are sister companies with Armstrong Energy, Inc. being the parent company. Armstrong Coal owns the Parkway Mine in Muhlenberg County, Kentucky, and Armstrong Fabricators owns the Fabricator Shop, a repair shop adjacent to Armstrong Coal

Company's Parkway preparation plant. Plaintiffs seek "declaratory and injunctive relief to remedy provisions of the Mine Act violative of the Plaintiffs' Due Process Rights under the Fifth Amendment to the U.S. Constitution, Defendants' pattern and practice of depriving Plaintiffs of their Due Process Rights under the Fifth Amendment to the U.S. Constitution, and Defendants' violations of the Administrative Procedure Act (the "APA"), the Mine Act, and other *ultra vires* conduct." (Complaint at ¶ 1.)

Plaintiffs allege that on February 28, 2012, after receiving an anonymous complaint regarding allegedly hazardous conditions, MSHA conducted an inspection of the Fabricator Shop. (Id. at ¶ 48.) Armstrong Fabricators permitted MSHA to conduct the inspection under protest. MSHA found no hazardous conditions. (Id. at ¶ 49.) Plaintiffs represent that Armstrong Fabricators permanently idled and abandoned the Fabricator Shop on August 12, 2012, and placed a sign on the gate of the Fabricator Shop property stating "Fab Shop Closed." (Id. at ¶ 50.) Plaintiffs claim that since August 12, 2012, no activity related to mining or reclamation has been done at the Fabricator Shop. On August 28, 2012, MSHA Inspector Wendell Crick appeared for the purpose of conducting a general inspection of the Fabricator Shop. (Id. at ¶ 52.) Armstrong Fabricators informed Inspector Crick that the Fabricator Shop had been permanently abandoned and that MSHA did not have jurisdiction over the Shop. Plaintiffs allege that Crick threatened to shut down the Fabricator Shop and the Parkway Mine if Armstrong Fabricators refused to permit the inspection. (Id. at ¶¶ 53-55.) Armstrong Fabricators permitted Crick to inspect the Fabricator Shop under protest. (Id. at ¶ 55.)

Following the inspection, Inspector Crick issued 24 citations alleging violations of MSHA's mandatory health and safety standards at the Fabricator Shop. (Id. at ¶57, 62; 30 U.S.C. § 814(a).)

Inspector Crick issued the citations to Armstrong Coal Company. MSHA directed that the conditions described in six of the citations be abated within three days of the investigation and fifteen of the citations be abated by September 7, 2012. (Id. at ¶ 61.) Abatement of the remaining three citations occurred on the same day the citations were written. (Id.)

In their Complaint, Plaintiffs argue that MSHA was not entitled to inspect the Fabricator Shop because "it was not and has not been a 'coal or other mine' subject to MSHA jurisdiction, at a minimum, since August 12, 2012." (Complaint at ¶¶ 50-51.) Plaintiffs request declaratory and injunctive relief preventing Defendants from "asserting jurisdiction over the Fabricator Shop, issuing unwarranted abatement orders, or issuing abatement orders for areas which MSHA does not have jurisdiction." (Id. at 35(K), ¶¶ 125-144.) Plaintiffs also seek a declaration that the Fabricator Shop is "not covered by the Mine Act, and thus is not subject to MSHA jurisdiction under the Mine Act." (Id. at 35(J).) Specifically, Plaintiffs claim that the Mine Act is violative of the Plaintiffs' due process rights under the Fifth Amendment to the United States Constitution because it does not provide any pre- or post-deprivation process sufficient to make Plaintiffs whole for wrongful assertions of jurisdiction and inspection authority by Defendants over Plaintiffs' property (id. at ¶¶ 66-78), for Defendants' wrongful issuance of abatement orders for areas over which Defendants have no jurisdiction, or for the deprivation of constitutionally protected liberty and property interests resulting from such conduct (id. at ¶¶ 79-91). (See also id. at ¶2.) Additionally, Plaintiffs claim that Defendants' conduct also violates the Plaintiffs' due process rights because Defendants have engaged in a pattern and practice of wrongfully asserting jurisdiction and inspection authority over Plaintiffs' property (id. at ¶¶ 92-104) and wrongfully issuing abatement orders for areas over which Defendants have no jurisdiction (id. at ¶¶ 105-117). (See also id. at ¶ 3.) Plaintiffs also assert that

3

Defendants violated the Administrative Procedure Act (id. at ¶¶ 118-122), engaged in *ultra vires* conduct (id. at ¶¶ 122-24), and exceeded the statutory jurisdiction granted to them in the Mine Act by acting in excess of their statutory jurisdiction, authority, or limitations. (Id. at ¶¶ 4-6.)

On October 5, 2012, Plaintiffs filed a motion for a preliminary injunction prohibiting Defendants from (1) asserting jurisdiction over Armstrong Fabricators' Fabricator Shop, (2) issuing and enforcing abatement orders to Plaintiffs for conditions observed in the Fabricator Shop, and (3) issuing and enforcing withdrawal orders to Plaintiffs for any alleged failure to abate conditions observed in the Fabricator Shop without due process of law. On October 26, 2012, Defendants filed a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court will first address Defendant's motion to dismiss for lack of jurisdiction.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely

4

the sufficiency of the pleading." Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  Here, the Defendants' motion to dismiss raises a Rule 12(b)(1) facial attack on Plaintiffs' jurisdictional allegations. Coxco Realty, LLC v. United States Army Corps of Engineers, 2008 WL 640946, *2 (W.D. Ky. March 4, 2008).

### III. DISCUSSION

**A.  Federal Mine Safety and Health Act**

Congress enacted the Federal Mine Safety and Health Act of 1977 (hereinafter "Mine Act") "to protect the health and safety of the Nation's coal or other miners." 30 U.S.C. § 801(g). In enacting the law, Congress recognized the "urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm[.]" 30 U.S.C. § 801(c); North Fork Coal Corp. v. Federal Mine Safety and Health Review Com'n, 691 F.3d 735, 738 (6th Cir. 2012). Under the Mine Act, Congress adopted a "split-enforcement" regime where issues of policy and enforcement are delegated to the Secretary of Labor and issues of adjudication are addressed by an independent review body known as the Federal Mine Safety and Health Review Commission ("the Mine Commission") and the federal court of appeals. North Fork Coal Corp., 691 F.3d at 741; Sec'y of Labor v. Mutual Mining, Inc., 80 F.3d 110, 113 (4th Cir.1996).

The Mine Act charges the Secretary of Labor to "develop, promulgate, and revise . . . mandatory health or safety standards for [all] coal or other mines."  30 U.S.C. § 811(a).[1] "The

---

[1] "Coal or other mine" includes "lands, . . . structures, facilities, equipment, machines, tools, or other property . . . used in, or to be used in, . . .the work of preparing coal or other minerals." 30 U.S.C. § 802(h)(1).

5

Secretary develops these standards by rulemaking . . . and enforces them by conducting inspections, issuing citations and proposing civil penalties for violations." North Fork, 691 F.3d at 742 (citing 30 U.S.C. §§ 813, 814(a), 815(a), 820(a)). Specifically, "[t]he Act requires the Secretary of Labor or his representative to conduct periodic, unannounced health and safety inspections of the Nation's mines." Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 202-203 (U.S. 1994). "Underground mines must be inspected at least four times a year, and surface mines must be inspected at least twice annually." Id. at 203 n. 1 (citing 30 U.S.C. § 813(a)). The Mine Act also grants inspectors "a right of entry to, upon, and through any coal or other mine." 30 U.S.C. § 813. "The Secretary has broad authority to compel immediate compliance with Mine Act provisions through the use of mandatory civil penalties, discretionary daily civil penalties, and other sanctions." Thunder Basin, 510 U.S. at 204. As noted by the United States Supreme Court, the Mine Act provides that in the event a violation occurs, the Secretary shall issue citations for violations of MSHA regulations, "recommend assessment of a civil penalty of up to $50,000 against any mine operator believed to have violated the Act," and specify a reasonable time for abatement. Id at 204 n. 4 (citing 30 U.S.C. §§ 814(a), 815(a), and 820(a)). If an operator fails to abate the violation within the time allotted, the Secretary may assess additional daily civil penalties. Id. (citing 30 U.S.C. § 820(b)). The Secretary may also "issue a 'withdrawal order,' directing all individuals to withdraw from the affected mine area, §§ 814(b) and (d), or pursue criminal penalties, § 820(d)." Id.

The Mine Act "establishes a detailed structure for reviewing violations of 'any mandatory health or safety standard, rule, order, or regulation promulgated' under the Act. § 814(a)." Thunder Basin, 510 U.S. at 207. "A mine operator has 30 days to challenge before the Commission any citation issued under the Act, after which time an uncontested order becomes 'final' and 'not subject

to review by any court or agency.'" Id. (quoting 30 U.S.C. §§ 815(a) and (d)). Challenges are heard before an administrative law judge (ALJ) with discretionary review by the full Mine Commission. 30 U.S.C. §§ 815(d), 823(d)(1). "Only the Commission has authority actually to impose civil penalties proposed by the Secretary, § 820(i), and the Commission reviews all proposed civil penalties *de novo*." Thunder Basin, 510 U.S. at 208. " The Commission may grant temporary relief pending review of most orders, § 815(b)(2), and must expedite review where necessary, § 815(d)." Id. Finally, "[a] mine operator may request that the Commission expedite its proceedings, § 815(d), and temporary relief of certain orders is available from the Commission and the court of appeals." Id. at 218 (citing 30 U.S.C. §§ 815(b)(2) and 816(a)(2)). "Mine operators may challenge adverse Commission decisions in the appropriate court of appeals, § 816(a)(1), whose jurisdiction 'shall be exclusive and its judgment and decree shall be final' except for possible Supreme Court review.'" Id. at 208.

**B. Jurisdiction**

The United States Supreme Court in Thunder Basin Coal Co. v. Reich held that the Mine Act precludes both pre-enforcement and post-enforcement statutory and constitutional challenges in federal district court unless those claims are both (1) wholly collateral to the Act's administrative review scheme *and* (2) outside of the agency's expertise, especially where a finding of preclusion could foreclose all meaningful judicial review. 510 U.S. at 212. In Thunder Basin, the mine operator filed suit in district court seeking injunctive relief preventing MSHA from enforcing an order that plaintiff alleged violated its rights under the National Labor Relations Act and violated the Constitution. The mine operator alleged that requiring it to challenge MSHA's interpretation through the Mine Act's review process would violate the Due Process Clause of the Fifth

7

Amendment "since the company would be forced to choose between violating the Act and incurring possible escalating daily penalties, or, on the other hand, complying . . . and suffering irreparable harm." Id. at 205. The Supreme Court rejected the argument holding that the structure of the Mine Act is intended to preclude even constitutionally based pre-enforcement challenges in federal district court and dismissed the claim for lack of jurisdiction. Id. at 208.

Defendants argue that the Court lacks jurisdiction over this case because the Mine Act precludes the Plaintiffs from bringing their constitutional and statutory pre-enforcement claims in district court. In contrast, Plaintiffs contend that the Mine Act does not preclude district court jurisdiction over their claims because the constitutional and "pattern and practice" claims are "wholly collateral" to the Mine Act administrative review scheme and a finding of preclusion would foreclose all meaningful judicial review. Thus, Plaintiffs maintain that this Court's assertion of jurisdiction over those claims is not violative of the holding set forth in Thunder Basin. Additionally, Plaintiffs contend that the doctrine of non-statutory review likewise vests jurisdiction over Plaintiffs' claims. The Court will address these arguments in turn.

### 1. Wholly Collateral to the Mine Act's Administrative Review

Plaintiffs contend that the Mine Act does not preclude district court jurisdiction over their claims because they do not fall within the range of administrative actions dedicated to Commission review by the Mine Act and are therefore "wholly collateral" to the Mine Act administrative scheme. According to Plaintiffs, their facial challenges to the Mine Act do not fall within this administrative review scheme because Plaintiffs do not challenge the issuance or modification of any order, citation, proposed assessment, or the reasonableness of the length of abatement time. Specifically, Plaintiffs contend that their "Fifth Amendment challenge to the Mine Act's lack of any provision

for a hearing prior to the deadlines typically imposed for complying with Defendants' abatement orders and to Defendants' pattern and practice of administering the Mine Act without providing any such hearing is separate and distinct from any challenge to the individual abatement orders." (Plaintiffs' Response at 10 n. 8.) The Court disagrees.

As evidenced by their Complaint, Plaintiffs' constitutional claims are the vehicle by which they seek to challenge the issuance of particular MSHA citations or orders. The Plaintiffs' Complaint and motion for preliminary injunction ask the Court to find that the citations and orders issued by MSHA in August and September of 2012 are invalid and unenforceable. (DN 1, DN 14.) Plaintiffs seek a declaration that the "Fabricator Shop is not within the definition of 'coal or other mine' as that term is defined within the Mine Act, is not covered by the Mine Act, and thus is not subject to MSHA jurisdiction under the Mine Act." (Complaint at p. 35(J)). Additionally, Plaintiffs seek equitable relief prohibiting the Defendants from "asserting jurisdiction over [the] Fabricator Shop," "issuing and enforcing abatement orders to Plaintiffs for conditions observed in the Fabricator Shop," and "issuing and enforcing withdrawal orders to Plaintiffs for any alleged failure to abate conditions observed in the Fabricator Shop without due process of law." (DN 14-3). Clearly, the due process claims are grounded in MSHA's conduct with respect to particular inspections and request interpretation of various provisions of the Mine Act that apply to those inspections. Thus, despite Plaintiffs' arguments to the contrary, they are challenging the issuance of particular orders and citations. See Elgin v. Department of Treasury, 132 S.Ct. 2126, 2139-40 (2012)(citing Heckler v. Ringer, 466 U.S. 602, 614 (1984) (holding that plaintiffs' claims were not wholly collateral to a statutory scheme of administrative and judicial review of Medicare payment decisions, where plaintiffs' constitutional and statutory challenge to an agency's procedure for reaching payment

9

decisions was "at bottom" an attempt to reverse the agency's decision to deny payment)).

Plaintiffs' characterization of their claims as a facial constitutional challenge to the Mine Act does not remove their claims from the purview of the statutory review scheme. The Supreme Court has rejected this argument in Thunder Basin finding that an adjudication of constitutional claims can be handled through the statutory review scheme of the Mine Act. Thunder Basin, 510 U.S. at 215. The Supreme Court noted that the Commission had addressed constitutional questions in previous enforcement proceedings and that both statutory and constitutional claims under the Mine Act can be meaningfully addressed in the Court of Appeals. Id. The Supreme Court confirmed this holding in Elgin v. Department of Treasury noting that the Supreme Court in Thunder Basin "expressly found that the statutory review scheme precluded district court jurisdiction over [a due process challenge to the Mine Act]." 132 S.Ct. at 2137 n. 6.

Additionally, the Court rejects Plaintiffs contention that the two "pattern and practice" claims are wholly collateral to the Mine Act's administrative review warranting the Court's exercise of jurisdiction over those claims. Plaintiffs allege that the "Defendants have through a pattern and practice repeatedly failed to afford the Plaintiffs the process due under the Mine Act inasmuch as they have systematically, and without regard to the fact that they have no statutory authority to assert jurisdiction over the Fabricators Shop and had not asserted jurisdiction over the Fabricators Shop prior to February 23, 2012, asserted jurisdiction over the Fabricators Shop since February 23, 2012." (Complaint at ¶ 98.) Additionally, Plaintiffs claim that "the Defendants have through a pattern and practice repeatedly failed to afford the Plaintiffs the process due under the Mine Act inasmuch as they have systematically issued unwarranted abatement orders to the Plaintiffs and issued abatement orders to the Plaintiffs over which MSHA has no jurisdiction." (Complaint at ¶ 111.) Plaintiffs

argue that because MSHA has engaged in a repeated pattern and practice of administering the Mine Act in a manner that deprives Plaintiffs of procedural due process, their claims are a "broad and general challenge[]" to the Defendants' conduct and are not barred by the holding of Thunder Basin. (Plaintiffs' Response at 11.)

Contrary to Plaintiffs' argument, Plaintiffs' "pattern and practice" due process claims are tied directly to the Secretary's interpretation of the Mine Act. Because resolution of these claims requires a particularized analysis of the language and implementation of the Mine Act with regard to MSHA's inspection and citation of the Fabricator Shop, the claims are not wholly collateral to the Mine Act's enforcement scheme provided by Congress. See Connecticut v. Spellings, 453 F. Supp. 2d 459, 493 (D. Conn. 2006).[2] This is not a case in which the Plaintiffs' challenge the validity of the agency's enabling statute in an action wholly independent of the agency's enforcement of a substantive provision. If the Court were to allow Plaintiffs' claim to fit into the pattern and practice exception, then the exception would swallow the rule essentially permitting mine operators to challenge the legality of an inspection by challenging whether an area qualifies as a "coal or other mine[]" under the Mine Act. See Eastern Bridge, LLC v. Chao, 320 F.3d 84, 91 (1st Cir. 2003).

---

[2] The Plaintiffs rely heavily on Elk Run Coal Co. v. U.S.Dep't of Labor, 804 F. Supp. 2d 8 (D.D.C. 2011) to support its argument that Thunder Basin does not preclude their claims. To the extent that Elk Run is still good law after Elgin's discussion of Thunder Basin, it is distinguishable from the present case. See Eglin, 132 S.Ct. at 2137. In Elk Run, six different mine operators that ran fourteen different mines alleged broad, systemic flaws in how MSHA adjudicated ventilation-plan disputes. The district court dismissed the APA and *ultra vires* claims holding that Thunder Basin barred those claims. The district court declined to dismiss the plaintiffs' pattern and practice due process allegations distinguishing between the broad constitutional challenges to the Mine Act's procedures for adjudicating ventilation plan disputes from any individual ventilation plan disputes. Elk Run, 804 F. Supp. 2d at 11-22.

For these reasons, the Court finds that Plaintiffs' claims are not wholly collateral to the Mine Act administrative scheme.

### 2. Foreclosure of All Meaningful Judicial Review

Plaintiffs argue that a finding that this Court lacks jurisdiction over Plaintiffs' claims would foreclose all meaningful judicial review of Plaintiffs' claims. According to Plaintiffs, the Mine Act contains no provision providing for any review of an assertion of jurisdiction by MSHA over Plaintiffs' property prior to an inspection of that property. Plaintiffs point out that the Mine Act specifically prohibits even notice of the inspection itself to Plaintiffs. (Plaintiffs' Response at 13.)

Contrary to Plaintiffs' argument, the Plaintiffs have the opportunity to challenge an assertion of jurisdiction by MSHA within the administrative review scheme. While it is true that the Mine Act provides for review by a federal court of appeals after a determination by the Commission rather than initial review by a federal district court, the statutory scheme does not deprive the Plaintiffs of all federal court review of their due process allegations. The Commission, a congressionally designated independent commission, can address both due process challenges to Mine Act provisions and challenges regarding whether an inspector has operated beyond his or her jurisdiction under the Mine Act. See Gray v. North Fork Coal Corp., 33 FMSHRC 27, 43 (2011)(evaluating a constitutional challenge to the Mine Act based on an alleged violation of procedural due process); MSHA v. Jim Walter Resources, Inc., 22 FMSHRC 21, 25 (2000)(concluding that a supply shop that housed materials and supplies for a nearby coal extraction site constituted a "mine" and there was "Mine Act jurisdiction" to inspect the shop); Thunder Basin, 510 U.S. at 215 (holding that, where reviewing body is not the agency itself but an independent commission, it may address constitutional questions). The Mine Act provides mechanisms to challenge the issuance of an order on an

expedited basis. And Plaintiffs are guaranteed a right to appeal the Commission's decision to the federal court of appeals. Thunder Basin, 510 U.S. at 215 ( "[Plaintiffs'] statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals."). Thus, contrary to the Plaintiffs' contention, this case "'does not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." Doe v. F.A.A., 432 F.3d 1259, 1263-1264 (11th Cir. 2005)(citing Thunder Basin, 510 U.S. at 215 n. 20).

Furthermore, the Supreme Court determined that Congress designed the Mine Act to streamline enforcement of mine health and safety regulations by keeping citations out of the district courts. American Coal Co. v. Mine Safety and Health Admin., 2010 WL 653113, *4 (S.D. Ill. 2010) (citing Thunder Basin, 510 U.S. at 208-211). Consideration of Plaintiffs' claims by this Court would frustrate efforts to enforce Mine Act safety laws and undermine the purpose of the Mine Act.

For these reasons, the Court finds that the Mine Act's administrative review scheme provides for meaningful judicial review of Plaintiffs' claims.

### 3. Doctrine of Nonstatutory Review

Under the doctrine of nonstatutory review, "a litigant may bypass available administrative procedures where there is a readily observable usurpation of power not granted to the agency by Congress." Greater Detroit Resource Recovery Authority v. U.S.E.P.A, 916 F.2d 317, 323 (6th Cir. 1990)(citing Leedom v. Kyne, 358 U.S. 184 (1958)). This exception is narrow and is invoked only in exceptional circumstances. Id.; Shawnee Coal Co. v. Andrus, 661 F.2d 1083, 1093 (6th Cir. 1981)("The Leedom jurisdiction exception to the exhaustion doctrine is not automatically invoked whenever a challenge to the scope of an agency's authority is raised. On the contrary, it is a narrow

anomaly reserved for extreme situations."). "In order to bring a case within the exception, it must be shown that the action of the agency was a patent violation of its authority or that there has been a manifest infringement of substantial rights irremediable by the statutorily prescribed method of review." Greater Detroit Resource, 916 F.2d at 323. This is not one of those exceptional cases. Although the construction of the term "[c]oal or other mine" is not properly before the Court, the statutory scheme suggests that there has been no clear overreaching of administrative authority warranting the exercise of jurisdiction over the present matter. 30 U.S.C. § 802(h)(1). See Louisville and Nashville R. Co. v. Donovan, 713 F.2d 1243, 1248 (6th Cir. 1983). Furthermore, the Mine Act provides for review of mine operator statutory and constitutional claims by both the Commission and the federal courts of appeal. 30 U.S.C. § 816(a)(1); Thunder Basin, 510 U.S. at 215; Jim Walter Resources, 22 FMSHRC at 25. Thus, any allegations of infringement of rights is remediable by the statutorily prescribed method of review. Thus, non-statutory review is inapplicable here.

Accordingly, the Court finds that the Plaintiffs' claims are not within the federal district court jurisdiction pursuant to Thunder Basin; and therefore, the Plaintiffs' Complaint is dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** on a motion by Defendants, United States Department of Labor, Mine Safety and Health Administration, Jim W. Langley, William Cook, III, and Wendell Crick, to dismiss this action [DN 16] is **GRANTED.** The motion by Plaintiffs, Armstrong Coal Co., Inc. & Armstrong Fabricators, Inc., for a preliminary injunction [DN 14] is **DENIED** as moot and the motion by Plaintiffs for a hearing [DN 21] is **DENIED**.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

February 20, 2013